■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v MIGUEL MINAYA, Respondent. [666 NYS2d 637] —Order, Supreme Court, Bronx County (Edward Davidowitz, J.), entered on or about March 7, 1997, which granted defendant's motion to suppress physical evidence, reversed, on the law and the facts, the motion denied and the matter remanded for further proceedings.

Police Officer Polotaye testified that at about 1:10 A.M. on Saturday, October 21, 1995, he and his partner, Police Officer Michael Carinha, were on routine motor patrol in a marked vehicle. As they drove north on Sheridan Avenue near the intersection of 164th Street, Polotaye saw several people in the lobby of an apartment building at 186 East 164th Street in the Bronx. He knew from prior arrests that the lobby was a center for the sale of powdered cocaine, especially on Friday and Saturday nights.

Polotaye and Carinha parked their car and entered the lobby. As they entered, Polotaye saw defendant hand money to someone and saw another man, Carlos Ramos, bending over with his hand inside a change purse. Polotaye knew from his experience that cocaine was often kept in a change purse. When Ramos saw the police, he stood up and left the purse by his feet on the floor.

Polotaye told everyone in the lobby not to move. He then told defendant to turn around and put his hands against the wall. Defendant did not respond and stood with his hands near his crotch. Polotaye told defendant a second time to put his hands against the wall. Defendant put his hands up, but then dropped them near his crotch. Polotaye repeated his order for the third time and, when defendant still did not comply, grabbed defendant's arms and placed his hands against the wall.

In the meantime, Carinha, who had confronted Ramos,

reported "[t]here's a lot in here." Polotaye understood his partner to mean that there was a lot of cocaine in the purse. When defendant refused to remove his hands from his crotch area, he patted defendant's crotch. Polotaye immediately felt and removed a .380 semi-automatic pistol loaded with five rounds. Inside the change purse were 19 tins of cocaine and 4 bags of marihuana. Defendant and Ramos were then arrested.

In evaluating the police action we must consider "whether or not it was justified in its inception and whether or not it was reasonably related in scope to the circumstances which rendered its initiation permissible" (*People v De Bour*, 40 NY2d 210, 222). The "right to temporarily detain for questioning [and] * * * to frisk" is activated "[w]here a police officer entertains a reasonable suspicion that a particular person has committed, is committing or is about to commit a felony or misdemeanor" or "reasonably suspects that he is in danger of physical injury by virtue of the detainee being armed" (*supra,* at 223).

The police officers had a reasonable basis to suspect that defendant had committed, was committing or was about to commit a crime in this case based on their observation of what appeared to be telltale signs of drug trafficking by defendant in an area and at a time known to the officers for such activity. In addition, there was an evident risk of danger to the police in continuing their investigation in such circumstances as to warrant the direction to defendant to place his hands against the wall.

Defendant's failure to comply with repeated orders to do so coupled with defendant's furtive behavior of covering his crotch with his hands, warranted the minimally intrusive patdown of his crotch in order to secure the officers' safety. The seizure of the weapon, in turn, was justified as the result of the discovery of a hard object resembling a gun. Concur—Sullivan, Tom, Mazzarelli and Colabella, JJ.

Murphy, P. J., dissents in a memorandum as follows: I would affirm. I agree with the suppression court that the sight of the defendant handing currency to another individual did not furnish the arresting officers with reasonable grounds to believe that a crime was being committed and, accordingly, that the stop and frisk initiated upon this predicate was illegal. The circumstance that the officers believed the location to be drug-prone, was not a substitute for actual present indicia of criminality.